IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CV-89-FL

| | |
|---|---|
| MIKE CAUSEY in his official capacity as the Commissioner of Insurance of the State of North Carolina, <br><br> Plaintiff, <br><br> v. <br><br> JESSICA K. ALTMAN Insurance Commissioner of the Commonwealth of Pennsylvania and her successors in office, in their capacity as Rehabilitator of Senior Health Insurance Company of Pennsylvania; PATRICK CANTILO, in his capacity as Special Deputy Rehabilitator of Senior Health Insurance Company of Pennsylvania; SENIOR HEALTH INSURANCE COMPANY OF PENNSYLVANIA IN REHABILITATION, <br><br> Defendants. | ORDER |

This matter is before the court on plaintiff's motion to remand (DE 18) and defendants' motion to stay pending the Judicial Panel on Multidistrict Litigation's decision on centralization (DE 22). The motions have been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, defendants' motion is denied and plaintiff's motion is allowed.

**STATEMENT OF THE CASE**

Plaintiff commenced this action for declaratory and injunctive relief on March 4, 2022, in Wake County Superior Court, asserting that defendants improperly are implementing a

rehabilitation plan for the defendant Senior Health Insurance Company of Pennsylvania in Rehabilitation ("SHIP") that modifies long term care insurance premium rates or benefits for North Carolina policyholders without plaintiff's prior approval.

Defendants filed a notice of removal to this court, on March 9, 2020, on the basis of diversity jurisdiction, under 28 U.S.C. § 1332. Defendants assert that the amount in controversy exceeds $75,000.00, and there is complete diversity of citizenship because the action is between citizens of different states.

The court held a telephonic conference pursuant to Federal Rule of Civil Procedure 16(a) on March 14, 2022, after which the court entered an order memorializing deadlines for briefing then anticipated motion to remand. The court stayed the deadline for defendants to serve a responsive pleading until 14 days from the date of the court's decision on any motion to remand.

Plaintiff filed the instant motion on March 21, 2022, asserting that there is a lack of complete diversity because plaintiff is an alter ego of the state of North Carolina and thus not a citizen of North Carolina for diversity of citizenship purposes. Plaintiff relies upon the following court filings in proceedings in the Commonwealth Court of Pennsylvania: 1) application for an order to place SHIP in rehabilitation, filed January 23, 2020, in case No. 1 SHP 2020 ("In re: SHIP"); 2) order of rehabilitation, filed January 29, 2020, in the case In re: SHIP; 3) opinion and order filed August 24, 2021, approving second amended plan of rehabilitation for SHIP, in the case In re: SHIP (hereinafter the "order approving the rehabilitation plan"); 4) notice of appeal of the same to the Supreme Court of Pennsylvania, filed September 21, 2021; 5) partial docket sheet in the case In re: SHIP, dated September 13, 2021; and 6) a transcript of hearing in In re: SHIP.

Defendants responded in opposition to plaintiff's motion, and shortly thereafter filed the instant motion to stay, with reliance upon: 1) a March 29, 2022, motion they filed in a Judicial

2

Panel on Multidistrict Litigation proceeding, to consolidate the instant case with three other pending federal cases (hereinafter the "consolidation motion"); and 2) the order approving the second amended plan of rehabilitation in In re: SHIP.

## STATEMENT OF THE FACTS

For purposes of context for the instant motions, the allegations in the complaint may be summarized as follows. Plaintiff is the "duly elected Commissioner of Insurance of the State of North Carolina, and brings this action in his official capacity." (Compl. (DE 1-1) ¶ 1). "SHIP obtained a license to conduct the business of insurance from the North Carolina Department of Insurance in . . . 2004." (Id. ¶ 2). "SHIP has conducted insurance business within North Carolina and has collected insurance premiums in this State," including $1,610,570 from North Carolina policyholders in the first three quarters of 2019. (Id. ¶ 3). SHIP is "engaged solely in the long-term care line of insurance business," and it "has not written any new insurance business since at least July, 2003." (Id. ¶ 12).

Defendants apart from SHIP have been appointed as rehabilitator and special deputy rehabilitator of SHIP. (Id. ¶¶ 6, 9).[1] "SHIP is statutorily insolvent," and in 2021, "SHIP had approximately $1.4 billion in assets and $2.6 billion in liabilities." (Id. ¶¶ 17, 19). On August 24, 2021, the Commonwealth Court entered its order approving the rehabilitation plan for SHIP. (Id. ¶ 42). Under the rehabilitation plan, "premium increases and policy modifications for SHIP's North Carolina policyholders will not be submitted to [plaintiff] for approval." (Id. ¶ 40). Defendants are "contacting North Carolina Policyholders with materials and an election form to

---

[1] First named defendant in this action is "Jessica K. Altman, Insurance Commissioner of the Commonwealth of Pennsylvania and her successors in office, in their capacity as Rehabilitator of [SHIP]." (Compl. (DE 1-1) at 2; ¶ 6). The court takes judicial notice that Jessica K. Altman ("Altman") is no longer the Commissioner of Insurance of Pennsylvania, and that her successor is Mike Humphreys. Where first named defendant includes Altman's "successors in office," id., for purposes of the instant motions, and for consistency of reference, the court does not constructively amend the caption of this order to reflect this succession.

fill out that will change their policy premium or benefits," for example, in one instance giving an "elderly North Carolina policyholder until March 11, 2022, to elect coverage from the coverage choices given or suffer a default coverage plan selection by the Rehabilitator."  (Id. ¶ 45).

In addition, under the rehabilitation plan, plaintiff is "required to formally advise the Rehabilitator, by way of an Opt-out Election, whether North Carolina accepts and submits to the rate increase component of the Rehabilitation Plan or whether North Carolina elects to 'opt-out' of the rate increase component of the Rehabilitation Plan."  (Id. ¶ 57).  Defendants mailed plaintiff an "Opt-out Notice" with a November 15, 2021, response deadline. (Id. ¶ 58).  On that deadline, plaintiff responded objecting to the "Opt-out Notice." (Id. ¶ 59).  The next day, defendants replied that North Carolina "will be deemed to have 'opted in' to the Rehabilitation Plan," thus allegedly demonstrating a "clear intent to raise premium rates for SHIP policyholders without seeking the . . . approval of [p]laintiff." (Id. ¶ 61).  According to that reply, "approximately 738 SHIP long-term care policyholders in North Carolina are subject to the rehabilitation plan." (Id. ¶ 32).

Additional facts bearing on the instant motions will be addressed in the analysis herein.

**COURT'S DISCUSSION**

A.    Motion to Stay

Defendants seek a stay of proceedings pending a ruling on their consolidation motion by the Judicial Panel on Multidistrict Litigation.  For the reasons set forth below, the requested stay is not appropriate under the circumstances of this case.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).  "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an

4

even balance." Id. at 254-55. "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." Williford v. Armstrong World Indus. Inc., 715 F.2d 124, 127 (4th Cir. 1983).

In this case, a stay pending ruling on the consolidation motion by the Judicial Panel on Multidistrict Litigation is not warranted based upon the totality of the circumstances. A significant factor weighing against a stay is that the motion to remand is pending and ripe for ruling, with briefing already completed based on the schedule set by the court at conference on March 14, 2022. The court set that schedule, in part, based upon recognition at conference that plaintiff alleged an "election effective date" of April 28, 2022, and that the court is prepared to make a decision on the motion to remand before that date. (See, e.g., Compl. Ex. 3 ¶ 9 (DE 1-1 at 39)).[2]

By contrast, in the proceeding before the Judicial Panel on Multidistrict Litigation, defendants filed their consolidation motion on March 29, 2022, after they filed their response in opposition to remand in the instant case. (See MDL Case No. 3033 (Doc. 1) (Judicial Panel on Multidistrict Litigation)). Briefing on the consolidation motion is ongoing, with a response in opposition filed by plaintiff on April 19, 2022, and a reply, if any, due April 26, 2022. (Id. (Doc. 4)). The Judicial Panel on Multidistrict Litigation has set oral argument on the motion to take place May 26, 2022, in Pittsburgh, Pennsylvania. (Id. (Doc. 10)).

In addition, the court takes into account that defendants' consolidation motion is opposed by the plaintiffs in each of the three other federal cases that defendants seek to consolidate with this one. (Id. (Doc. 12, 13, 15)). Moreover, in each of those three other federal cases, the plaintiffs have also moved to remand the cases to state court where they commenced, in North Dakota, Iowa,

---

[2] Unless otherwise specified, page numbers in citations to documents in the record are to the page number specified by the footer generated by the court's case management/electronic case filing (CM/ECF) system, and not the page number, if any showing, on the face of the document.

and New Jersey. See Godfread v. Altman, No. 1:22-CV-44 (D.N.D.) (motion to remand filed April 11, 2022); Iowa Ins. Comm. v. Comm. of Ins. for the Commonwealth of Penn., No. 4:22-CV-83 (S.D. Iowa) (motion to remand filed March 25, 2022); Caride v. Altman, No. 3:22-CV-1329 (D.N.J.) (motion to remand filed April 8, 2022). Issues raised in those remand motions, while similar, are not dependent upon a ruling in this court, or vice versa, where jurisdiction depends largely on the status of plaintiffs as insurance commissioners under their respective state laws. This court is better suited than the proposed Multidistrict Litigation court, the Eastern District of Pennsylvania, to apply North Carolina law and the law of this circuit to the issues raised by the motion to remand in this case, just as the district courts in North Dakota, Iowa, and New Jersey are best suited to decide the motions to remand in their respective cases.

As such, interests of judicial economy are not served by awaiting a ruling on consolidation by the Judicial Panel on Multidistrict Litigation. Likewise, defendants have not demonstrated hardship and inequity to themselves if the action is not stayed. Whether following a ruling by the Judicial Panel on Multidistrict Litigation, or before, a federal district judge will have to decide the issues raised by the motion to remand filed in the instant case, considering plaintiff's status under North Carolina law. At the same time, there is potential prejudice to plaintiff in delaying a ruling on the motion to remand, if the outcome of the motion results in remand to state court where proceedings may move forward on the merits, given that the consequences of the elections described in the complaint potentially are unfolding now or may be unfolding in the near future.

Cases cited by defendants in support of a stay are not persuasive under the present circumstances. Many cases cited, for example, do not involve a stay of decision on a motion to remand. See, e.g., Conner v. AT&T, No. CV F 06-0632 AWI DLB, 2006 WL 1817094, at *3 (E.D. Cal. June 30, 2006) (granting stay, thus deferring decisions on "possible dismissal motions, and .

6

. . potential discovery issues"). In one case cited by defendants, in fact, the district court ruled on a pending motion to remand prior to staying decision on a motion to dismiss pending consolidation by the Judicial Panel on Multidistrict Litigation. See Bullard v. Am. Airlines, Inc., 929 F. Supp. 1284, 1286 (W.D. Mo. 1996). Another case cited by defendants involving a motion to remand, Selico v. Waterman S.S. Co., No. CIV. A. 99-386, 1999 WL 172958, at *1-2 (E.D. La. Mar. 26, 1999), is distinguishable because proceedings in a related multidistrict litigation case were already ongoing, in contrast to the instant circumstances where a consolidation decision has not been made.

In sum, under the circumstances presented, a stay of decision on the motion to remand is not warranted. The court thus turns to consideration of that motion.

B.      Motion to Remand

In a case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The burden of establishing federal jurisdiction is placed upon the party seeking removal." Mulcahey v. Columbia Organic Chem. Co., 29 F.3d 148, 151 (4th Cir. 1994). "If diversity jurisdiction is challenged, the burden of proof remains on the party invoking federal court jurisdiction, and the citizenship of each real party in interest must be established by a preponderance of the evidence." Roche v. Lincoln Prop. Co., 373 F.3d 610, 616 (4th Cir. 2004), rev'd on other grounds, 546 U.S. 81 (2005).

Further, "[b]ecause removal jurisdiction raises significant federalism concerns, [the court] must strictly construe removal jurisdiction." Mulcahey, 29 F.3d at 151. "If federal jurisdiction is doubtful, a remand is necessary." Id.; see Common Cause v. Lewis, 956 F.3d 246, 252 (4th Cir. 2020) (recognizing the court's "duty to construe removal jurisdiction strictly and resolve doubts

7

in favor of remand") (quoting Palisades Collections LLC v. Shorts, 552 F.3d 327, 336 (4th Cir. 2008)).

Under the federal removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). As pertinent here, a federal district court has original jurisdiction over all civil actions between "citizens of different States" where the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a)(1).

"It is well established that for purposes of diversity jurisdiction, a State is not a 'citizen.'" S.C. Dep't of Disabilities & Special Needs v. Hoover Universal, Inc., 535 F.3d 300, 303 (4th Cir. 2008). "Moreover, a public entity created under state law, which is 'the arm or alter ego of the State,' is likewise not a citizen for purposes of diversity jurisdiction." Id. (quoting Moor v. County of Alameda, 411 U.S. 693, 717 (1973)). "But an entity created by the State which functions independently of the State with authority to sue and be sued, such as an independent authority or a political subdivision of the State, can be a 'citizen' for purposes of diversity jurisdiction." Id.

"In determining if a public entity is an alter ego of the state, and therefore not a 'citizen' under § 1332, courts have generally looked to the standards announced in cases addressing whether governmental entities are entitled to Eleventh Amendment immunity as an arm of the state." Maryland Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005). For example, such immunity "extends to state agencies and other governmental entities that can be viewed as arms of the State." Id. (quotations omitted).

"The line separating a State-created entity functioning independently of the State from a State-created entity functioning as an arm of the State or its alter ego is determined by the particular

8

legal and factual circumstances of the entity itself." S.C. Dep't of Disabilities, 535 F.3d at 303. "To define that line, [the court of appeals has] articulated a nonexclusive list of four factors to be considered," as follows:

> (1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State;
>
> (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions;
>
> (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and
>
> (4) how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State.

Id. (quotations omitted) (hereinafter the "S.C. Dep't of Disabilities factors").

Also pertinent to the instant analysis is the concept of the "official capacity" of a public officer. "[A] suit against a governmental officer 'in his official capacity' is the same as a suit against the entity of which the officer is an agent." McMillian v. Monroe Cty., Ala., 520 U.S. 781, 785 n. 2 (1997) (quotations omitted). "[V]ictory in such an 'official-capacity' suit imposes liability on the entity that the officer represents." Id. In the context of immunity, upon which the aforementioned factors are based, "only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." Hafer v. Melo, 502 U.S. 21, 25 (1991).

Application of the foregoing principles compels the conclusion that plaintiff is an arm of the State of North Carolina and not a citizen for purposes of diversity jurisdiction. As an initial matter, plaintiff sues "in his official capacity as Commissioner of Insurance of the State of North Carolina." (Compl. (DE 1-1) at 2). The real party in interest is thus "the entity of which the officer

9

is an agent," McMillian, 520 U.S. at 785, in this case the State of North Carolina itself.  Under North Carolina law, the Commissioner of Insurance is an elected officer of the State.  N.C. Const., Article III, § 7(1). He is one of only a dozen "civil executive officers of this State," including the Governor, the Secretary of State, Treasurer, and Attorney General.  N.C. Gen. Stat. § 147-3(c). He is the "chief officer" of the Department of Insurance, which is established by statute "as a separate and distinct department, which is charged with the execution of laws relating to insurance and other subjects placed under the Department."  N.C. Gen. Stat. §§ 58-2-1, 58-2-5.  The Department of Insurance is an agency "in the executive branch of the government of this State," included within the "Council of State," which includes, for example, the Secretary of State, Treasurer, and Attorney General.  N.C. Gen. Stat. § 150B-2(1b); N.C. Const., Article III, § 8; see Cooper v. Berger, 371 N.C. 799, 800 (2018).

The aforementioned circumstances alone establish that plaintiff is an arm of the State of North Carolina for purposes of diversity jurisdiction, because plaintiff is one of the "civil executive officers of this state," and the Department of Insurance that he leads is one of the core "state agencies" of the State of North Carolina. N.C. Gen. Stat. § 147-3(c); Maryland Stadium Auth., 407 F.3d at 260.  As such, this case raises an even less compelling issue of jurisdiction than was presented in S.C. Dep't of Disabilities, where the court of appeals concluded that the South Carolina Department of Mental Health and Department of Disabilities and Special Needs were "integral arms of the state." 535 F.3d at 308.

In addition, and in the alternative, the factors set forth in S.C. Dep't of Disabilities compel the conclusion that plaintiff is an arm of the state.  With respect to the first S.C. Dep't of Disabilities factor, plaintiff does not seek "any recovery by the entity as plaintiff," but rather seeks declaratory and injunctive relief.   535 F.3d at 303.  The declaratory relief sought is in aid to plaintiff's

10

execution of the insurance laws of North Carolina for the alleged benefit of North Carolina residents:

> 77. Plaintiff seeks a declaratory judgment from this Court that any order entered in the Pennsylvania Commonwealth Court which grants [defendants] the authority to impose premium increases and policy modifications on SHIP's North Carolina policyholders <u>without submission to Plaintiff Commissioner for prior approval is not entitled to full faith and credit</u>.
>
> 78. Plaintiff Commissioner seeks a declaratory judgment from this Court that <u>Defendants must comply with the insurance laws of North Carolina</u>.
>
> 79. Plaintiff Commissioner seeks a declaratory judgment from this Court that <u>Defendants may not implement the Second Amended Rehabilitation Plan in North Carolina</u>.
>
> 80. The declaratory judgment sought in this action will ensure that Plaintiff Commissioner can <u>perform his statutory duty to faithfully execute the insurance laws of North Carolina</u>.

(Compl. ¶¶ 77-80) (emphasis added). The injunctive relief sought is similarly concerned with enjoining defendants "from modifying SHIP long term care insurance premium rates or benefits for North Carolina policyholders <u>without the prior approval of Plaintiff Commissioner</u>." (Id. ¶ 82) (emphasis added). Exercise of insurance laws for the benefit and protection of North Carolina residents is part of plaintiff's statutory mission as an officer of the state. <u>See</u>, <u>e.g.</u>, N.C. Gen. Stat. § 58-2-40 (1) (providing, among other duties, that the Commissioner shall "prevent persons subject to the Commissioner's regulatory authority from engaging in practices injurious to the public"). Therefore, this factor weighs in favor of treating plaintiff as an arm of the state.

The second factor serves to reiterate that plaintiff is an elected officer of the State of North Carolina, and he leads the Department of Insurance, as a member of the Council of State. Plaintiff is not autonomous from the government of the State of North Carolina, but rather a part of it. 535 F.3d at 303; N.C. Gen. Stat. § 147-3(c); N.C. Const. Art. III § 8. The third and fourth factors, likewise, confirm that plaintiff, by virtue of his statutory mandate, is "involved with state

11

concerns" rather than "local concerns," and that plaintiff is treated under state law as an integral part of the executive government of the State of North Carolina. Id.

In sum, because plaintiff is an arm of the State of North Carolina, he is not a citizen for purposes of diversity jurisdiction and diversity jurisdiction is thus lacking.

Defendants' arguments to the contrary are unavailing. Defendants urge the court to find this case equivalent to North Carolina v. Blackburn, 492 F.Supp.2d 525 (E.D.N.C. 2007), in which this court denied a motion to remand a suit brought by the North Carolina Commissioner of Insurance ("Commissioner"). Blackburn, however, is instructively distinguishable. There, the Commissioner "filed suit in his capacity as the liquidator of London Pacific Life & Annuity Company ("London Pacific"), a North Carolina corporation." Id. at 526. Blackburn thus triggered a different application of the rule that the real party in interest is "the entity of which the officer is an agent," McMillian, 520 U.S. at 785, there, London Pacific. Blackburn also is distinguishable because, there, the Commissioner sought "to recover commission advances and guarantees on commissions defendants allegedly owe[d] London Pacific," 492 F.Supp.2d at 526, thus implicating the first S.C. Dep't of Disabilities factor much differently than here. 535 F.3d at 303.

Furthermore, the court's analysis of the remaining S.C. Dep't of Disabilities factors turned on the Commissioner's "capacity as the liquidator in [that] case," which is not a capacity that plaintiff asserts in the instant case. 492 F.Supp.2d at 530-532. For example, the court noted that, in that capacity, the Commissioner "appears to be acting as a fiduciary under the general supervision of the Wake County Superior Court." Id. at 531. The court further observed that the North Carolina General Statutes did not "address whether North Carolina views the Commissioner in his capacity as liquidator as the State's alter ego as applied here (i.e., as a litigant-liquidator pursuing a common law debt collection action)." Id. at 532 (emphasis added). None of these facts

12

unique to Blackburn are present here. Accordingly Blackburn is inapposite on the question of plaintiff's status as a citizen for diversity jurisdiction purposes.[3]

Defendants argue that the first S.C. Dep't of Disabilities factor weighs in their favor because "no part of the Complaint seeks relief for the public generally or for the benefit of the State of North Carolina," and judgment "will inure to the benefit of Plaintiff's personal preference on the value of liquidation over rehab or to the benefit of a small group of policyholders." (Defs' Mem. (DE 8) at 13). The language of the complaint does not support this argument.

To the contrary, with respect to public and State benefits, the complaint asserts that defendants have sought to "prevent Plaintiff Commissioner from performing his statutory duty to enforce North Carolina law regarding the regulation of the business of insurance," and to "give Defendants the power to void the insurance laws of the State of North Carolina." (Compl. ¶ 63). It asserts that the "declaratory judgment sought in this action will ensure that Plaintiff Commissioner can perform his statutory duty to faithfully execute the insurance laws of North Carolina." (Id. ¶ 80).

Furthermore, with respect to plaintiff's official involvement and the benefits sought, the complaint alleges that defendants notified plaintiff of the opportunity to "opt-out" of the rehabilitation plan, and plaintiff objected in his capacity as Insurance Commissioner, including with the assertion that "[a]s a North Carolina licensed entity, the Department expects SHIP to file its rate increase proposal for review before implementing it." (Compl. Ex. 5 (DE 1-1) at 62). Plaintiff further objected on the basis that"[r]ate regulation has long been reserved to the insurance

---

[3]  At most, Blackburn is pertinent to the status of defendants as litigants appearing in "their capacity as rehabilitator of [SHIP]," and not appearing as arms of the State of Pennsylvania. (Compl. (DE 1-1) at 2). For this reason, the court rejects defendants' invitation to hold that jurisdiction over the instant suit lies solely in the Supreme Court of the United States as a civil suit between states. (See Defs' Br. (DE 21) at 26-27).

commissioners of each state." (Id.). Defendants, in turn, tied plaintiff's response to that notice expressly to consequences for the State of North Carolina:

> Dear Commissioner Causey . . . . If you do not provide an opt-out notice that complies with the Plan's requirements, in accordance with the Approved Plan SHIP will not file any application for rate increases with your department. Instead, your state will be deemed to have opted into the Plan and the holders of the approximately 738 SHIP long-term care policies issued in North Carolina . . . will be treated as opt-in policyholders. . .

(Compl. Ex. 2 (DE 1-1 at 34) (emphasis added). In this manner, defendants themselves have taken the position that plaintiff was acting on behalf of his department and the State of North Carolina, and not in a personal, individual, sense, in objecting to the opt-out notice.

Furthermore, contrary to defendants' argument, the complaint does not assert that judgment "will inure to the benefit of a small group of policyholders." (Defs' Mem. (DE 8) at 13). Indeed, the complaint does not seek relief in the form of a particular result for policyholders, but rather seeks adherence to a process that follows North Carolina law and insurance regulation, which would allow the Commissioner to give "prior approval" of "premium increases and policy modifications." (Compl. ¶¶ 77, 82). In this respect, the complaint seeks relief that is directed at plaintiff's official functions in executing the insurance laws and regulations of the state. In any event, even if the complaint seeks in part benefits for North Carolina policyholders, it is consistent with plaintiff's statutory obligations as Insurance Commissioner to protect such North Carolina citizens from allegedly injurious conduct. See N.C. Gen. Stat. § 58-2-40 (1) (tasking plaintiff with "prevent[ing] persons subject to the Commissioner's regulatory authority from engaging in practices injurious to the public").

Defendants further suggest that plaintiff is acting "autonomously" as a member of the public, and not as the state or one of its agents, because the statutes authorizing the declaratory and injunctive relief sought by the complaint apply to "any person." (Defs' Mem. at 13). This

14

argument misses the mark on two levels. First, the statutory authority upon which plaintiff relies is not limited to that authorizing declaratory and injunctive relief. Rather, plaintiff relies upon multiple additional statutes governing licensing and supervision of insurance companies by the Insurance Commissioner, which duties are uniquely reserved to plaintiff acting in his official capacity. (See, e.g., Compl. ¶¶ 26-31, 33, 49, 53, 61 (citing, N.C. Gen. Stat. §§ 58-2-40(1), 58-2-125, 58-2-150, 58-3-1, and 58-51-95)). Second, the statutes upon which plaintiff relies to state a claim for declaratory and injunctive relief are not determinative of plaintiff's status. Rather, plaintiff's status "as an arm of the State or its alter ego is determined by the particular legal and factual circumstances of the entity itself." S.C. Dep't of Disabilities, 535 F.3d at 303.

Defendants argue that the second S.C. Dep't of Disabilities factor should be considered "neutral" where there is "no apparent mechanism for the state to veto [plaintiff's] actions." (Defs' Mem. at 15). Defendants rely, for example, on a comparison to the University System of Maryland in Maryland Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 264 (4th Cir. 2005). That case, however, demonstrates why dependence upon the S.C. Dep't of Disabilities factors, including veto power of the state, is unnecessary here, where plaintiff's alleged actions arise by virtue of the North Carolina Constitution and General Statutes as a component of statewide governance, a part of the Council of State, and one of only a dozen "civil executive officers of this State." N.C. Gen. Stat. § 147-3(c). The connection of the University System of Maryland to that state, by contrast, was more dependent upon a combination of factors. See 407 F.3d at 263-265. The court of appeals, in effect, suggested that the State of Maryland's retention of a "veto over most of the University's actions" showed its subservience to the State, id. at 264, which stands in contrast to plaintiff's more direct participation in state governance.

Defendants also argue that plaintiff's "claim to act as an alter ego is undermined by his failure to take any of the administrative steps contemplated by the laws he purports to be enforcing." (Defs' Resp. at 17). For example, defendants note that N.C. Gen. Stat. § 58-2-50 contemplates hearings to address violations, and § 58-51-95 provides plaintiff with authority to revoke approval for an insurance form only after notice and hearing. Those statutes, however, do not prohibit plaintiff from bringing suit to enforce state insurance law. In fact, § 58-2-60 expressly authorizes plaintiff to bring suit in superior court for injunctive relief to restrain any violation, or threatened violation, of state insurance laws codified in Chapter 58 of the North Carolina General Statutes.

Finally, defendants take issue with the merits of plaintiff's claims, suggesting for instance that the statutory authority upon which plaintiff relies is inapplicable to an insurer in rehabilitation, such as SHIP, and that court orders in other jurisdictions may place SHIP outside plaintiff's alleged supervision. However, "[a] federal court must satisfy itself [first] that it has jurisdictional power to rule on the merits of a case." Roach v. W. Virginia Reg'l Jail & Corr. Facility Auth., 74 F.3d 46, 49 (4th Cir. 1996) (quotations omitted). Here, the court lacks jurisdiction to delve into these arguments on the merits. In any event, the asserted flaws in plaintiff's claims are not so clear from the face of the statutes to transform plaintiff's status from an arm of the state to an independent actor.

In sum, plaintiff, as an alter ego and arm of the State of North Carolina, is not a citizen for purposes of diversity jurisdiction. Therefore, this court lacks jurisdiction over plaintiff's claims and the action must be remanded to the Superior Court of Wake County.

16

Case 5:22-cv-00089-FL   Document 28   Filed 04/25/22   Page 16 of 17

## CONCLUSION

Based on the foregoing, defendants' motion to stay (DE 22) is DENIED, and plaintiff's motion to remand (DE 18) is GRANTED. This case is REMANDED to the General Court of Justice, Superior Court Division, Wake County, North Carolina, for further proceedings. The clerk is DIRECTED to transmit a certified copy of this order to the clerk of the General Court of Justice, Superior Court Division, Wake County, North Carolina, and to file in this case a copy of the clerk's transmittal letter with certified copy of the instant order.

SO ORDERED, this the 25th day of April, 2022.

                                                LOUISE W. FLANAGAN
                                                United States District Judge